UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------ X
                                                       :
IN RE VITAMIN C ANTITRUST LITIGATION                   :
                                                       :        06-MD-1738 (BMC) (JO)
------------------------------------------------------ :
                                                       :
This document relates to:                              :
                                                       :
ANIMAL SCIENCE PRODUCTS, INC., et al.,                 :        **MEMORANDUM**
                                                       :        **DECISION AND ORDER**
                          Plaintiffs,                  :
                                                       :        05-CV-0453
v.                                                     :
                                                       :
HEBEI WELCOME PHARMACEUTICAL CO.                       :
LTD., et al.,                                          :
                                                       :
                          Defendants.                  :        OCT 1 - 2012
------------------------------------------------------ X

BROOKLYN OFFICE

**COGAN,** District Judge.

During the course of this litigation, the Ministry of Commerce of the People's Republic of China (the "Ministry") submitted a number of written statements to the Court in the nature of *amicus* submissions. Defendants seek to offer as evidence at trial (1) the Ministry's written statement dated August 31, 2009 (the "2009 Statement"), (2) the Ministry's written statement dated June 9, 2008 (the "2008 Statement"), and (3) eight excerpts from the Ministry's 2006 *amicus* submission (the "*Amicus* Statements") (collectively, the "Ministry Statements").

Since a representative of the Ministry will not testify at trial and the statements are offered to prove the truth of the matters asserted, they constitute hearsay. See generally Fed. R. Evid. 801(c). Defendants maintain, however, that these statements fall within the public records exception to the hearsay rule, Fed. R. Evid. 803(8), or, alternatively, the residual hearsay exception, Fed. R. Evid. 807. Plaintiffs, on the other hand, argue that these exceptions are

inapplicable and that the statements should also be excluded as irrelevant. For the reasons set forth below, the Court concludes that the Ministry Statements are relevant but are nonetheless inadmissible since they do not fall into either exception to the hearsay rule and should, in any case, be excluded under Rule 403.

## DISCUSSION

I.    The Ministry Statements' Relevance

Since irrelevant evidence is not admissible, Fed. R. Evid. 402, I address plaintiffs' argument that the Ministry Statements are irrelevant out the outset. Plaintiffs contend that the Ministry Statements consist of legal opinions that defendants' alleged conduct was compelled by Chinese law. These legal opinions would be irrelevant at trial, plaintiffs argue, because the Court already concluded, in deciding defendants' summary judgment motion, that Chinese law did not compel defendants' conduct and because the interpretation of foreign law is a matter reserved for the Court rather than the jury.

Plaintiffs oversimplify the issue. Although the Court concluded that Chinese law did not compel defendants' conduct as a matter of law in the context of defendants' motion for summary judgment, the Court recognized at the July 10, 2012 Status Conference that "Chinese law is very vague, ambiguous, is dependent upon, to some extent, things that people may or may not have said." Therefore, "there are factual issues surrounding the determination of whether Chinese law actually precluded these defendants from doing anything but fixing the price of Vitamin C. So, there are things for a jury to determine[.]" Insofar as the Ministry Statements describe the regulatory regime in which defendants operated, they are relevant to the jury's findings concerning the defenses of state action and sovereign compulsion.

II.    The Public Records Exception

Rule 803(8) provides that a "record or statement of a public office" that "sets out . . . the office's activities" is not excluded as hearsay, regardless of whether the declarant is available as a witness, so long as "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(i), (B). The public records exception is applicable "to reports of foreign public offices and agencies that otherwise come within its terms." In re Parmalat Sec. Litig., 477 F. Supp. 2d 637, 640 (S.D.N.Y. 2007) (citing F.A.A. v. Landy, 705 F.2d 624 (2d Cir. 1983)). Rule 803(8)'s exception "is grounded on the presumption . . . that 'public officials perform their duties properly without motive or interest other than to submit fair and accurate reports.'" In re MetLife Demutualization Litig., 262 F.R.D. 217, 237 (E.D.N.Y. 2009) (quoting Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 805 F.2d 49 (2d Cir. 1986)). Evidence is "presumptively admissible if it meets the requirements of" Rule 803(8); although "[t]his presumption may be rebutted by showing that the sources of information or other circumstances indicate a lack of trustworthiness." United States v. Awad, No. 06 Cr. 600, 2007 WL 1988382, at *3 (S.D.N.Y. July 3, 2007). "Where the Rule's requirements are satisfied, "the burden to show a lack of trustworthiness shifts to the party opposing admission." Id.

With regard to the threshold requirements of Rule 803(8)(A)(i), the Ministry constitutes "a public office" as it is the Chinese equivalent of a U.S. cabinet-level department. The Ministry Statements hardly fit the mold of the kinds of public records contemplated by Rule 803(8)(A)(i), however, since they are, as discussed further below, litigation position papers drafted by an interested *amicus* that fall outside of its regular activities. Rule 803(8)(A)(i)'s exception to the hearsay rule is grounded in the presumed reliability of descriptions of agency activities submitted

3

by disinterested government entities. It is far from clear that this presumption should apply to litigation-oriented materials such as the Ministry Statements. Nonetheless, since the Ministry Statements do pertain to the activities of the Ministry (and the related Chamber of Commerce of Medicines and Health Products Importers and Exporters (the "Chamber")) concerning the regulation of vitamin C production, the Court will assume that the requirements of Rule 803(8)(A)(i) are satisfied. The admissibility of the Ministry Statements, therefore, turns on their trustworthiness under Rule 803(8)(B).

Defendants contend that trustworthiness, in the Rule 803(8) context, concerns whether a particular piece of evidence is self-authenticating, and cite Blake v. Pellegrino, 329 F.3d 43 (1st Cir. 2003), in support. But, as Blake itself shows, the Rule 803(8) trustworthiness inquiry is far broader. The Blake court considered "the manner in which the [government record] was completed, the sources of information utilized, the credentials of the person completing it, [and] how the record was maintained" as all bearing on the trustworthiness of a piece of evidence. Id. at 48. Indeed, as the Supreme Court has noted, Rule 803(8)'s "trustworthiness inquiry" functions as "the primary safeguard against the admission of unreliable evidence[.]" Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167, 109 S. Ct. 439, 448 (1988). In the context of reports of government investigations under Rule 803(8)(A)(iii), the trustworthiness inquiry considers, among other factors, "possible bias when reports are prepared with a view to possible litigation." Id. at 167 n.11, 449 n.11.

Plaintiffs argue that evidence created for specific use in litigation is categorically excluded from the scope of Rule 803(8). There is authority supporting plaintiffs' position. See, e.g., United States v. Feliz, 467 F.3d 227, 237 (2d Cir. 2006) ("Rule 803(8) excludes documents prepared for the ultimate purpose of litigation"); King v. Town of Wallkill, 302 F. Supp. 2d 279,

4

299 (S.D.N.Y. 2004) ("Even if considered a public record of the Town for purposes of the [Rule 803(8)] public records exception, the letter was prepared in contemplation of the present litigation and therefore remains inadmissible."). Defendants criticize the authority cited by plaintiffs and point to a Seventh Circuit decision where documents prepared by French government entities specifically for use in litigation were found to be admissible. See In re Oil Spill by the Amoco Cadiz, 954 F.2d 1279, 1308 (7th Cir. 1992) ("Although some supplementary documents . . . were prepared especially for use in this litigation, they remain reports of public activities. . . . Because these document come within both the letter and the spirit of Rule 803(8) (founded as it is on a belief that public employees are generally reliable), we conclude that they were admissible."). Although the Court is, of course, not bound to follow the rulings of the Seventh Circuit, the outcome in In re Oil Spill by the Amoco Cadiz merely means that an appellate court found that a district court did not abuse its discretion in admitting hearsay evidence, not that a contrary ruling to exclude the evidence would have been an abuse of discretion. See City of New York v. Pullman, Inc., 662 F.2d 910, 914 (2d Cir. 1981) (ruling that the district court "did not abuse its broad discretion" "in determining whether the hearsay document offered in evidence ha[d] sufficient independent indicia of reliability to justify its admission"). Still, to the extent that the decision in In re Oil Spill by the Amoco Cadiz suggests that documents created in connection with litigation fall automatically within the scope of Rule 803(8), I respectfully disagree.[1] Rule 803(8) allows the admission of public records that would otherwise constitute hearsay because of an assumption that government employees are generally

---

[1] Moreover, the vast majority of the French government records admitted in In re Oil Spill by the Amoco Cadiz were expense reports "maintained independently of the litigation." 954 F.2d at 1308. Those few records that were prepared for the litigation were also expense reports. They reflected the French governmental entities' regular functions and only set forth routine and simple facts. Moreover, they only comprised a miniscule portion of the French plaintiffs' total damages claim. Id. at 1306-07. In this light, I do not find the Seventh Circuit's decision compelling here.

reliable and non-biased and, therefore, the records are trustworthy. Where, as here, the records were prepared in connection with litigation, however, the basis for that assumption of trustworthiness vanishes. See King, 302 F. Supp. 2d at 299.

The circumstances of this litigation provide ample additional and independent reasons to conclude that the Ministry Statements are not trustworthy. While the mere fact that the evidence at issue was created by a foreign, communist government does not make the Ministry Statements untrustworthy, see United States v. Regner, 677 F.2d 754, (9th Cir. 1982) (refusing, in the Sixth Amendment context, to "conclude that . . . document[s] executed by public officials of communist countries" are unreliable, absent any indication of bias suggesting otherwise), there is no dispute that the Ministry is not impartial in this litigation.

The Ministry has admitted that "the Ministry, the relevant Chamber of Commerce (which is an instrumentality of the Ministry), and the defendants have shared a common interest from the time this lawsuit was filed in seeking its prompt dismissal." In February 2005, shortly after this litigation commenced, the Ministry, the Chamber, and defendants participated in a meeting where "all present orally agreed that, in light of their common interest, they would share litigation-related information with each other." The law firm of Sidley Austin, which represented the Ministry as an *amicus*, provided legal advice to the Chamber and defendants concerning this lawsuit. Defendants have acknowledged "working in close coordination" with the Ministry and the Chamber "in defending this litigation[,]" and that the Ministry has "been actively involved in coordinating and approving Defendants' legal strategy."

The Ministry's partiality is reflected in its statements to the Court. For example, the Ministry shared its draft *amicus* brief with at least one defendant. Further, in ruling on defendants' summary judgment motion, the Court noted significant flaws in the Ministry's 2009

6

Statement, including that the 2009 Statement failed to take account of the different regulatory regimes at issue and that it failed to cite relevant Chinese laws and regulations. As a result of these flaws, the Court concluded that the 2009 Statement "does not read like a frank and straightforward explanation of Chinese law" but instead "reads like a carefully crafted and phrased litigation position." These same flaws implicate both the 2008 Statement (noting that the "Ministry specifically charged the Chamber . . . with the authority and responsibility, subject to Ministry oversight, for regulating through consultation, the price of vitamin C") and the *Amicus* Statements (commenting that the Ministry "compell[ed]" vitamin C exporters to participate in a subcommittee and instituted a price "verification system that included severe penalties for non-compliance"). Additionally, neither the Ministry nor defendants have made a showing that the Ministry has previously prepared descriptions of Chinese regulatory systems or legal principles, or that preparing such documents is one of its regular functions.[2]

Defendants represent that the Ministry Statements are corroborated by the testimony of Qiao Haili. Even if true, Mr. Qiao's testimony is not sufficient to render the Ministry Statements trustworthy. Not only is Mr. Qiao a retired employee of the Chamber, a Ministry instrumentality, but, as the Court previously noted, "Mr. Qiao is different from other witnesses" in that his testimony is not "subject to a thorough 'fact check' through documents the witness created, reviewed, or which bear on the witness' testimony." Cf. Blim v. W. Elec. Co., Inc., 731 F.2d 1473, 1476-77 (10th Cir. 1984) ("There could be some serious doubt as to the admissibility

---

[2] Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 513 F. Supp. 1100, 1192-1993 n.121 (E.D. Pa. 1981), allowed the admission of a statement from the Japanese trade ministry to support a defense of foreign sovereign compulsion. However, there was no suggestion that the interests of those defendants and the Japanese ministry with regard to the litigation were allied as closely as the interests of the Ministry and defendants are here.

of the . . . report *had it not been so fully tested and developed* through the testimony of the witness" who provided much of the information included in the report) (emphasis added).[3]

Therefore, the circumstances of this litigation, including the fact that the Ministry Statements were created in connection with this action, do not support the conclusion that the Ministry Statements are sufficiently trustworthy to be admitted under Rule 803(8).

III.    The Residual Hearsay Exception

Defendants argue, alternatively, that the Ministry Statements are admissible under the residual hearsay exception set forth in Rule 807 which allows a statement not covered by Rule 803 to be admitted if: "(1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will serve the purposes of these rules and the interests of justice." The residual hearsay exception is meant to "be used very rarely, and only in exceptional circumstances." Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (quoting Huff v. White Motor Corp., 609 F.2d 286 (7th Cir. 1979)).

For the same reasons discussed in the context of Rule 803(8), the Ministry Statements lack "equivalent circumstantial guarantees of trustworthiness." See King, 302 F. Supp. 2d at 300 (concluding that a statement "prepared in anticipation of this litigation" lacks "equivalent circumstantial guarantees of trustworthiness" for Rule 807 purposes.). Further, given the flaws in the 2009 Statement that the Court identified in its summary judgment decision, it is doubtful

---

[3] Defendants argue, in a footnote, that since the Court will instruct the jury that the Ministry has not produced documents relating to Mr. Qiao's testimony, it is "improper for the Court to exclude [the] Ministry's statements of its regulatory regime while at the same time criticizing the Ministry for not providing just such documents." Defendants confuse the point. The jury instruction is meant to inform the jury that plaintiffs have not been able to test Mr. Qiao's testimony with contemporaneous Ministry documents that may bear on the credibility of that testimony. The documents at issue here are different. They are Ministry statements made after the fact, in consultation with counsel, and in the context of this litigation – hardly the kind of documents needed to place Mr. Qiao's testimony in context.

that the Ministry Statements are "more probative on the point for which [they are] offered than other evidence[.]"  Indeed, the "traditional" sources of foreign law that the Court considered when ruling on summary judgment, including government directives and charter documents for the Chamber and Vitamin C Subcommittee, provide more reliable evidence of the regulatory regime that governed defendants' conduct, especially when supplemented with testimony from Mr. Qiao.  Therefore, the Ministry Statements are also not admissible under Rule 807 and must be excluded as hearsay.

IV.    Rule 403

Finally, even if the Ministry Statements were otherwise admissible, the Court would exclude them under Rule 403, which allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  As discussed, the jury will need to determine whether the Chinese regulatory regime, as a matter of fact, "actually precluded these defendants from doing anything but fixing the price of Vitamin C."  If the Ministry Statements are admitted, there is a real danger that the jury will understand them to be binding statements of Chinese law, even though there is other evidence which calls the Ministry's description of the regulatory regime into question.  See Jackson v. City of Pittsburgh, Civil Action. No. 07-111, 2011 WL 3443951, at *13 (W.D. Pa. Aug. 8, 2011) (ruling that even if evidence that charges against plaintiff were dismissed at a preliminary hearing was deemed relevant – despite the fact that the legal standard at the preliminary hearing differed from the probable cause standard at issue in the litigation – the evidence was "properly excluded under Rule 403 because the probative value of such evidence was substantially outweighed by the fact that the different legal standards employed in the two

9

scenarios would unnecessarily confuse the issues, mislead the jury and prejudice the

Defendants.") See also Paolitto v. John Brown E. & C., Inc., 151 F.3d 60 (2d Cir. 1998)

(affirming the exclusion of a state agency's findings and investigative file under Rule 403 despite

the availability of the Rule 803(8) exception where many of the agency's findings were undercut

by plaintiff's evidence); Hall v. W. Prod. Co., 998 F.2d 1050, 1058 (10th Cir. 1993) (affirming

the district court's refusal to admit an agency report under Rule 403, although Rule 803(8)

applied, where the evidence that was before the agency was also presented to the jury and "the

only purpose to be served by admitting" the agency report into evidence "would be to suggest to

the jury that it should reach the same conclusion as" the agency.) (internal quotation marks

omitted). Given the flaws in the Ministry Statements, their admission is more likely to confuse

the jury than to aid in its consideration of whether defendants were compelled as a matter of fact.

Further, the jurors will be presented with ample evidence that will allow them to

determine the compulsion issue, including Mr. Qiao's testimony which, defendants represent, is

consistent with the Ministry Statements. These circumstances further support exclusion under

Rule 403. See Highland Capital Mgmt. v. Schneider, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)

("the trial court has 'broad discretion to exclude even relevant evidence . . . if it would be

needlessly cumulative.'") (quoting United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181

(2d Cir. 1989)). In addition, as the Court has previously noted in the context of Mr. Qiao's

testimony, it would be unfair and prejudicial to plaintiffs to allow certain selected Ministry-

related evidence to be introduced when the Ministry's entitlement to sovereign immunity

precludes full development and testing of that evidence. The Ministry continues in its peculiar

assertion of sovereign immunity – it will waive it to allow a former employee to testify for

defendants, but it will not produce documents that bear on that testimony, and, now, it will allow

10

its carefully crafted position statements to be read to a jury, but it will not allow its employees responsible for the content of those documents to be cross-examined about them. It would be prejudicial to plaintiffs to permit the Ministry to sculpt its participation in this action through defendants' introduction of the Ministry's litigation statements while the Ministry is immune from cross examination.

## <u>CONCLUSION</u>

For these reasons, the Ministry Statements are excluded.

**SO ORDERED.**

s/BMC

U.S.D.J.

Dated: Brooklyn, New York
September 27, 2012