UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

IN RE VITAMIN C ANTITRUST LITIGATION

06-MD-1738 (BMC) (JO)

------------------------------------------------------------

This document relates to:

ANIMAL SCIENCE PRODUCTS, INC., et al.,

**MEMORANDUM
DECISION AND ORDER**

Plaintiffs,

05-CV-0453

v.

HEBEI WELCOME PHARMACEUTICAL CO.
LTD., et al.,

Defendants.

------------------------------------------------------------ X

**COGAN, District Judge.**

Defendant China Pharmaceutical Group. Co. Ltd. ("CPG") has objected to Magistrate Judge James Orenstein's Orders of October 25, 2012 and November 8, 2012 insofar as the Orders require CPG to produce certain documents contained in the work papers of Deloitte (Hong Kong) ("Deloitte"), CPG's outside auditor and a third party. For the reasons set forth below, CPG's objection is sustained and Magistrate Judge Orenstein's Orders are reversed to the extent they require CPG to produce Deloitte's work papers.

## BACKGROUND

As set forth in the parties' joint letter, plaintiffs claimed that CPG's efforts to produce documents responsive to their discovery requests were inadequate for a number of reasons and brought a motion to compel CPG to search for and produce responsive documents. The Court referred plaintiffs' motion to compel to Magistrate Judge Orenstein, who, after holding a hearing,

issued a Minute Order on October 25, 2012 that granted the motion to compel in its entirety. Plaintiffs subsequently submitted a proposed order which Magistrate Judge Orenstein adopted in its entirety, over CPG's objections, in an Order dated November 8, 2012.

At issue here is plaintiffs' request for responsive information and documents contained in Deloitte's work papers. A CPG employee testified that Deloitte may have discussed with Weisheng (CPG's subsidiary) changes in Weisheng's vitamin C prices as part of Deloitte's audit of CPG.[1] Plaintiffs assert that any such conversation would have been reflected in Deloitte's work papers. On several occasions CPG advised plaintiffs that it does not have control over Deloitte's work papers. But it is undisputed that CPG never asked Deloitte whether it had any documents in its possession that were responsive to plaintiffs' requests.

At the hearing on plaintiffs' motion to compel, Magistrate Judge Orenstein concluded "that the Deloitte work papers and other materials referred to in the motion are manifestly within CPG's control and that they have an obligation to obtain those documents." Magistrate Judge Orenstein then adopted plaintiffs' proposed order, including the portion which provided that:

> [B]ecause the Court finds that CPG has control of all work papers and other audit-related documents prepared by Deloitte in connection with its retention as an independent auditor for CPG, CPG shall obtain copies of all these documents from Deloitte, and then CPG's counsel or the independent specialist shall search them for information or documents responsive to Plaintiffs' discovery requests.

CPG argues that Magistrate Judge Orenstein's Orders should be set aside as clearly erroneous for two reasons: first, plaintiffs' motion did not seek to have CPG produce Deloitte's work papers and, second, plaintiffs failed to demonstrate that CPG has control of Deloitte's work papers.

---

[1] Whether CPG is currently an audit client of Deloitte is not clear from the record.

2

# DISCUSSION

Objections to orders made by a magistrate judge on non-dispositive matters are reviewed under a clearly erroneous standard. Fed. R. Civ. P. 72(a). "Pre-trial discovery issues are generally considered non-dispositive matters." Gagasoules v. MBF Leasing LLC, No. 08-CV-2409, 2009 WL 5176576, at *2 (E.D.N.Y. Dec. 22, 2009). In considering objections from a magistrate judge's ruling on a pre-trial discovery matter, a district judge will only set aside or modify a portion of the magistrate judge's order determined to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" City of New York v. Bob Moates' Sport Shop, Inc., 252 F.R.D. 133, 135 (E.D.N.Y. 2008) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 68 S. Ct. 525 (1948)). An order is "contrary to law when it fails to apply or misapplies relevant statues, case law or rules of procedure." Catskill Dev., LLC v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (internal quotation marks omitted).

CPG's first argument – that plaintiffs' motion did not seek production of the Deloitte work papers – is unavailing because it is premised on an improperly narrow reading of plaintiffs' motion. Although plaintiffs did not seek the production of all of Deloitte's work papers pertaining to CPG, they did seek the production of any materials contained in the work papers that were responsive to their discovery requests. Plaintiffs' portion of the parties' joint letter clearly states that, according to testimony by a CPG employee, Deloitte "may have asked Weisheng why Vitamin C prices were fluctuating as part of its audit of CPG's financials." Plaintiffs also argue that, despite the fact that "[a]ny such conversation should have been reflected in Deloitte's audit work papers, over which CPG has control as the entity requesting the

3

audit . . . CPG has not asked Deloitte to see whether it has relevant, responsive documents." Although plaintiffs did not specifically include the search of the Deloitte work papers in their itemized requests for relief, the context of the parties' letter, their prior correspondence, and the fact that the issue was addressed during the hearing before Magistrate Judge Orenstein all make it abundantly clear that plaintiffs' motion sought production of the Deloitte work papers.

CPG's second argument – that it lacks control over Deloitte's work papers – requires more attention. "Evidence in a party's 'control' has been interpreted to mean evidence that the party has the legal right, authority, or practical ability to obtain by virtue of its relationship with the party in possession of the evidence." R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 24 (S.D.N.Y. 2010). The law is clear that "[i]t is the discovering party's burden to demonstrate that the requested entity has either the legal right or the practical ability to obtain the documents in question from their custodian." In re Nortel Networks Corp. Sec. Litig., No. 01 Civ. 1855, 2004 WL 2149111, at *2 (S.D.N.Y. Sept. 23, 2004).

There is no support for plaintiffs' conclusory suggestion that the mere existence of an auditing relationship provides CPG with the right to obtain Deloitte's work papers. According to the Interpretation of Rule 501 of the American Institute of CPAs' Code of Professional Conduct, a "[m]ember's working papers are the member's property and need not be provided to the client" absent a separate legal or contractual requirement. Rule 501 distinguishes between work papers, which belong to the auditors, and client-provided or third party-provided records and work product, which the auditors must generally provide to the client upon request. Similarly, the Hong Kong Statement of Auditing Standards sets forth that "[w]orking papers are the property of the auditors" and that "portions of or extracts from the working papers may be made available to the entity *at the discretion of the auditors.*" (emphasis added). These types of well-known

4

practice standards, which are commonly incorporated by reference or practice in the engagement letter between auditor and client, strongly suggest that CPG does not have the legal right to obtain Deloitte's work papers.

That leaves us with the question of whether CPG can obtain the work papers anyway as a practical matter. Although it is undisputed that CPG has not asked Deloitte either to provide it with the work papers or to search the work papers for responsive information, that fact, by itself, is insufficient to establish that CPG has the "practical ability" to obtain the documents from Deloitte. It may well be the case that Deloitte would turn the documents over to CPG if asked but plaintiffs have made no showing to support that conclusion and, thus, have not met their burden. See Golden Trade, S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 525 n.7 (S.D.N.Y. 1992) ("In the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion."). Consequently, Magistrate Judge Orenstein's Orders must be set aside insofar as they find that CPG has control of Deloitte's work papers and compel CPG to produce them.

The case on which plaintiffs principally rely is inapposite. In S.E.C. v. Strauss, No. 09 Civ. 4150, 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009), a defendant sought to compel the Securities and Exchange Commission ("SEC") to grant him access to a database of work papers maintained, coincidentally, by a Deloitte affiliate which was a third party to that litigation. The SEC had obtained remote access to the Deloitte database through an investigative subpoena. Although the court denied defendant's motion for other reasons, it concluded that the Deloitte database was within the SEC's control for discovery purposes because the SEC had an "arrangement" with Deloitte that gave it "complete and immediate access to the contents of the database via the web portal" and this "mechanism" gave the SEC the "practical ability to obtain"

5

the relevant documents. Id. at *8. Plaintiffs here have made no showing of any arrangement between CPG and Deloitte or any mechanism that gives CPG the practical ability to access Deloitte's work papers.

Nevertheless, CPG has not objected to asking Deloitte if it has documents responsive to plaintiffs' requests. The Court therefore directs CPG to (1) turn over any documents created by CPG or any third party that Deloitte obtained in the course of its audits and has in its (Deloitte's) possession that are responsive to plaintiffs' requests, unless CPG has previously produced those identical documents to plaintiffs; and (2) ask Deloitte to turn over any of its work papers that are responsive to plaintiffs' requests. Any such documents must be produced by December 10, 2012. It appears that CPG has already examined the documents it received from Deloitte for information responsive to plaintiffs' requests.

Plaintiffs are not entitled to any further relief. Although the specific question of whether Deloitte possesses work papers reflecting conversations with Weisheng about vitamin C price fluctuations arose in a recently-completed deposition, it was entirely foreseeable that Deloitte, as the external auditor of a defendant, might have relevant information in its possession, since auditors invariably include price checking information as part of any audit program. If plaintiffs

were interested in that information, they should have sought it directly from Deloitte through appropriate channels years ago when discovery was ongoing.

Therefore, CPG's objection [581] is sustained and Magistrate Judge Orenstein's Orders are reversed to the extent set forth above.

**SO ORDERED.** /s/(BMC)

U.S.D.J.

Dated: Brooklyn, New York
      November 19, 2012