```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
IN RE VITAMIN C ANTITRUST LITIGATION                        :    MASTER FILE
                                                            :    06-MD-1738 (BMC) (JO)
 ---------------------------------------------------------  :
                                                            :
This document relates to:                                   :
                                                            :
ANIMAL SCIENCE PRODUCTS, INC., et al.,                      :
                                                            :
                            Plaintiffs,                     :    05-CV-453
                                                            :
v.                                                          :
                                                            :
HEBEI WELCOME PHARMACEUTICAL CO.                            :
LTD., et al.,                                               :
                                                            :
                            Defendants.                     :
                                                            :
----------------------------------------------------------- X
```

## MEMORANDUM DECISION AND ORDER

**COGAN**, District Judge.

  In this multi-district antitrust class action, plaintiff obtained judgment of approximately $148 million against defendants Hebei Welcome Pharmaceutical Co., Ltd. ("Hebei") and North China Pharmaceutical Group Corporation ("NCPG") pursuant to a jury verdict. Familiarity with the facts is presumed, see, e.g., In re Vitamin C Antitrust Litig., No. 05 Civ. 0453, 2013 WL 6191945 (E.D.N.Y. Nov. 26, 2013), and the facts will be set forth only as necessary to explain the Court's rulings.

  Presently before the Court is plaintiff's motion for civil contempt and to appoint a receiver. Plaintiff argues that defendants are in contempt of the Court's Memorandum Decision and Order, dated October 22, 2014 (the "Order"), which, *inter alia*, granted in part and denied in part a number of plaintiff's motions relating to post-judgment discovery. For the reasons set

forth below, the Court concludes that the judgment debtors are in contempt, but the remedies proposed by plaintiff are either not authorized by law or ineffectual.

## BACKGROUND

In March 2014, plaintiff moved for post-judgment discovery and orders in aid of executing on the judgment. Specifically, plaintiff requested the Court to enter turnover orders, restraining notices, orders compelling discovery, and permission to register the judgment in other U.S. District Courts. The Court denied plaintiff's motions, explaining that the turnover orders failed to identify specific assets to be turned over. Nevertheless, plaintiff was allowed to renew its motion if it located specific assets it wanted to be turned over. Plaintiff's remaining requests were denied as unnecessary in light of plaintiff's ability to serve discovery requests and restraining notices on defendants directly.

After serving the relevant requests on defendants, plaintiff renewed its motion in relation to certain of NCPG's assets and funds on deposit with certain banks in Hebei's name. Defendants opposed plaintiff's motion, moved for an unsecured stay of execution, and asked the Court to abstain from enforcing the judgment. NCPG argued that it was entitled to sovereign immunity. Hebei argued that plaintiff's motion had to be addressed to the banks as garnishees, but also stated that the particular accounts cited in plaintiff's motion no longer existed. Hebei also sought an unsecured stay of execution, claiming that it could not afford to post a bond and threatening bankruptcy if the judgment were enforced.

It is undisputed that defendants never produced any discovery in response to plaintiff's post-judgment requests, except disclaiming the existence of certain assets plaintiff requested to be turned over. Plaintiff then moved for an order to compel discovery in aid of executing the judgment.

Thereafter, the Court issued the Order, which granted plaintiff's turnover motion against Hebei and granted its motion to compel in aid of execution against both defendants. First, the Court found that NCPG's assets are protected by sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), and therefore that plaintiff's requests for orders in aid of execution as to NCPG were denied, and any restraining notices purporting to encumber NCPG's assets were dissolved. Second, the Court denied Hebei's motion to stay execution and/or abstain from executing the judgment. Third, the Court granted plaintiff's turnover motion against Hebei and directed service of a restraining notice as to Hebei on its U.S. counsel. Fourth, the Court granted plaintiff's motion for a turnover order as to Hebei's bank accounts, but cautioned that "defendants can only turn these accounts over if they actually exist." Fifth, the Court denied plaintiff's request that the Court order defendants to make installment payments pursuant to CPLR § 5226 because plaintiff did not identify the income stream it sought to attach.

Finally, the Court granted plaintiff's motion to compel discovery in aid of execution against both defendants. It held that defendants had not made the requisite showing of actual conflict with foreign law, but that it would grant plaintiff's motion even assuming that they had. Especially relevant to the Court was the fact that the Chinese government did not prevent merits discovery in this case on the grounds that it would violate Chinese laws. The Court denied without prejudice plaintiff's request to register the judgment in other U.S. District Courts.

After the Order was issued, defendants' counsel represented that neither defendant would be complying with the Order in relation to discovery because they could not defy the State-Owned Assets Supervision and Administration Commission of the Hebei Province of the People's Republic of China ("SASAC") without risking criminal prosecution in China. In

addition, counsel for Hebei said he could not confirm nor deny whether Hebei was honoring the restraining notice.

Plaintiff then brought the instant motion seeking to hold defendants in civil contempt and seeking per diem sanctions and to have plaintiff appointed as the receiver for Hebei's property pursuant to New York Civil Practice Law and Rules § 5228.

## DISCUSSION

### I. Civil Contempt

Civil contempt is intended to "coerce future compliance [by the contemnor] and to remedy any harm past noncompliance caused the other party." Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996). An order of civil contempt is appropriate where (1) a party fails to comply with a clear and unambiguous order; (2) the proof of noncompliance is clear and convincing; and (3) the violating party has not been reasonably diligent and energetic in trying to accomplish what was ordered. See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd, 478 U.S. 421, 106 S. Ct. 3019 (1986). An order is "clear and unambiguous" if it is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed" or required. New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d Cir. 1989). Finally, it is not necessary to show that the noncompliance was willful. See Local 638, 753 F.2d at 1178.

"American law permits a party that is unable to comply with a discovery request to present substantial justification for its failure to disclose and thereby avoid contempt sanctions. First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 22 (2d Cir. 1998) (internal quotation marks omitted). Although "[i]nability to comply is . . . a long-recognized defense to a civil contempt citation," Donovan v. Sovereign Sec., Ltd., 726 F.2d 55, 59 (2d Cir. 1984) (internal

4

quotation marks omitted), a contemnor must prove "clearly, plainly, and unmistakably" that "compliance is impossible." Huber v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (quotation marks and citations omitted). Defendants only have a defense where compliance is "literally impossible, and as a result, any attempts at coercion are pointless." Badgley v. Santacroce, 800 F.2d 33, 37 (2d Cir. 1986).

*A. Turnover Order and Restraining Notice*

The Court rejects plaintiff's argument that Hebei is "effectively in contempt of the turnover order and restraining notice." Although the Order denied defendants' motion to dissolve restraining notices as to Hebei and granted plaintiff's motion tor turnover orders as to Hebei, the Order was clear that defendants can only turn over accounts "if they actually exist." Hebei has represented that the accounts that plaintiff wants turned over do not exist. Furthermore, since the Order was issued, Hebei will not confirm compliance with the restraining notice. Nevertheless, plaintiff has not demonstrated that Hebei has failed to comply with these portions of the Order, much less that the noncompliance is clear and convincing.[1]

*B. Motion to Compel*

With respect to plaintiff's motion to compel, the Order was clear and unambiguous with respect to defendants' need to produce post-judgment discovery. Defendants were ordered to produce documents regarding defendants "(1) cash and cash equivalent assets; (2) investment assets available for sale; (3) real estate holdings; (4) durable assets (such as equipment); and (5) secured debts encumbering any of the foregoing." No party disputes that defendants have failed, and refused, to produce such documents. Thus, defendants' noncompliance is clear and convincing.

---

[1] Plaintiff implicitly concedes this point, stating "whether Hebei Welcome is at this moment technically in contempt of the turnover order and restraining notice is beside the point . . . the fact that Hebei Welcome is evading execution through contempt of the discovery order informs the nature of the appropriate sanction against Hebei Welcome."

5

The Court finds that defendants have not been reasonably diligent in attempting to comply with the Order. Specifically, the Court rejects defendants' arguments that they have been diligent in attempting to comply, but that they cannot do so because they would face criminal prosecution by China. Although defendants are correct that "fear of criminal prosecution constitutes a weighty excuse for nonproduction," Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 211, 78 S. Ct. 1087, 1095 (1958), such a fear is belied by the history of this case. First, the Court has already found that defendants' claimed risk of criminal prosecution for complying with the Order is pretextual. The Order went further and stated that "[e]ven if criminal prosecution were certain, defendants could not show hardship from compelled production, because the purportedly untenable situation in which defendants find themselves is entirely of their own creation." Second, defendants have produced merits discovery without being prosecuted, or fear of prosecution. See Spotana Inc. v. Am. Talent Agency, Inc., No. 09 Civ. 3698, 2014 WL 7191400, at *6 (S.D.N.Y. Dec. 3, 2014) ("Where at some point in the past a defendant could have complied with the order at issue, [t]he court will presume a present ability to comply") (internal quotation marks omitted). In fact, as the Order noted, "the Chinese Government, through its Ministry of Commerce ('MOFCOM'), has been participating in this case as *amicus* for years," but never objected to defendants producing merits discovery or stated that doing so would contravene Chinese law. This reasoning is as persuasive today as it was when the Order was issued.

Defendants' new evidence, the SASAC letter and Dr. Shen's opinion, which supposedly constitutes their "substantial justification" for failing to produce discovery, does not alter this conclusion. Initially, the SASAC letter, on its face, does not prohibit defendants from doing anything voluntarily. Instead, it says that "state-owned assets are owned by the state;" NCPG's

6

and Hebei's state-owned assets are "subject to the supervision and administration of Hebei SASAC;" and that as parties to the Hague Evidence Convention, "no U.S. authorities or individuals may directly collect evidence from [NCPG] or Hebei Welcome in the PRC without first obtaining the authorization of the competent PRC authorities." The letter does not mention any request by defendants seeking authorization to produce the documents at issue, nor does it reference any category of documents for which production is sought. Defendants' assertion that they twice petitioned the Chinese government orally does not demonstrate the diligence in stressing to the Chinese government the importance of producing these documents.

Dr. Shen's report is no better. Although he concludes that "defendants and the PRC government may refuse to comply with [plaintiff's discovery] requests," he bases this conclusion on the fact that the "discovery requests may infringe upon China's state security and commercial secrets;" and that defendants "will need to obtain the approval from the competent government authorities . . . failing which they may be subject to penalties imposed by the PRC laws and regulations." Rather than demonstrate the certainty of prosecution by the Chinese government if defendants comply with the Order, Dr. Shen's report does the opposite. In fact, the report only reinforces the fact that defendants may themselves seek authorization from the SASAC to produce the documents.

Accordingly, the Court cannot find, on the basis of this evidence, that it is impossible for defendants to comply with the Order. Thus, defendants are in civil contempt of the Order.[2]

---

[2] Based on the fact that defendants' newly submitted evidence does not provide a substantial justification for defendants' noncompliance, the Court also rejects the argument made by defendants' counsel during oral argument that the categories of documents that were sought during merits discovery are different than those being sought during post-judgment discovery.

7

## II. Sanctions

Since defendants are in contempt of the Order, the next issue is what sanctions should be imposed, if any. When imposing coercive sanctions, a court should consider: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [them]." Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir. 1987). However, coercive sanctions should not be imposed where they are unlikely to compel compliance. See Simkin v. United States, 715, F.2d 34 (2d Cir. 1983) (explaining that when sanctions are not going to compel compliance, they lose their remedial characteristics and become punishments).

First, plaintiff's motion for a coercive *per diem* sanction against NCPG is denied. Putting aside the issue of whether the FSIA bars a coercive fine as to NCPG, defendants have already shown an unwillingness to satisfy the money judgment against them. Plaintiff acknowledges its uphill battle when it requests that "[t]he Court should impose a fine large enough to have a chance of coercing NCP Group to comply with the Order." But if $148 million is not enough, how much is? Although the Court believes NCPG's contempt is willful, it is difficult to believe that a sanction in any amount will coerce NCPG to comply with the Order when it is already unwilling to pay the approximately $148 million judgment against it. The Court is not going to engage in the idle gesture of imposing a fine or an escalating monetary sanction when there is already $148 million unpaid.

Second, plaintiff's motion to be appointed as a receiver of Hebei's property, pursuant to C.P.L.R. § 5228, is denied. C.P.L.R. § 5228 states, in relevant part,

> Upon motion of a judgment creditor . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal

> property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment . . . The order of appointment shall specify the property to be received, the duties of the receiver and the manner in which they are to be performed.

The appointment of a receiver is a matter of judicial discretion. See United States v. Vulpis, 967 F.2d 734, 736 (2d Cir. 1992). In exercising that discretion, courts consider: (1) alternative remedies available to the creditor; (2) the degree to which receivership will increase the likelihood of satisfaction; and (3) risk of fraud or insolvency if a receiver is not appointed. See United States v. Zitron, No. 80 Civ. 6535, 1990 WL 13278, at *1 (S.D.N.Y. Feb. 2, 1990); see also Hotel 77 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 317, 926 900 N.Y.S.2d 698, 707 (2010).

Plaintiff's request for a receivership is facially defective as it does not "specify the property to be received," C.P.L.R. § 5228(a), or indicate how plaintiff would manage the assets it seeks to receive. Plaintiff's proposed receivership order appoints it to be the receiver of Hebei's "personal property." Although plaintiff represents that federal courts have issued receivership orders that put all of a debtors property into the receivership, and has cited to one such case, see Spotnana Inc. v. Am. Talent Agency, Inc., No. 09 Civ. 3698, 2014 WL 7191400, at *1 (S.D.N.Y. Dec. 3, 2014), the Court is unaware of any other. In fact, New York State courts routinely adhere to the requirement that a receivership order pursuant to Section 5228 must specify the property to be received. See, e.g., Harbor Footwear Grp., LTD. v. ASA Trading, Inc., 1 Misc. 3d 911(A), 781 N.Y.S.2d 624 (Sup. Ct. Nassau Cnty. 2004) (stating that a receivership "will be denied where there is no property of the judgment debtor which is properly amenable to receivership"); Aquavella v. Equivision, Inc., 181 Misc. 2d 322, 323, 694 N.Y.S.2d 547, 548 (Sup. Ct. Monroe Cnty. 1999) (granting a receivership order limited to certain stock owned by the judgment creditor); Will of Talbott, 93 Misc. 2d 1090, 1091, 403 N.Y.S.2d 889, 890 (Sur. Ct. Nassau Cnty. 1978) ("A trustee in bankruptcy is similar to a receiver appointed pursuant to

9

CPLR 5228, subd. a, in a proceeding to enforce a judgment except that a receiver is appointed to take possession of specifically enumerated property whereas a trustee is entitled to take possession of all of the property."); Benlian v. Vartabedian, 91 Misc. 2d 968, 971, 398 N.Y.S.2d 984, 986 (Civ. Ct. Queens Cnty. 1977) (recognizing that Section 5228 "never contemplated a 'fishing expedition' … that is why the order must specify the property that the debtor has an interest in"); In re Owen's Estate, 44 Misc. 2d 842, 845, 254 N.Y.S.2d 974, 977 (Sur. Ct. N.Y. Cnty. 1964) (explaining that "a receivership under CPLR 5228 extends only to the specified property identified in the order of appointment"). Although the Court is mindful that plaintiff finds itself in a difficult position because it cannot identify property to place in receivership if defendants do not comply with the Order, it cannot appoint plaintiff to be a receiver of all Hebei's personal property given the clear statutory requirement to specify property to be received.

Beyond this problem, as I indicated oral argument, I am highly skeptical that appointing a receiver would put plaintiff in a different position than it currently occupies as a judgment creditor. Plaintiff has not provided a sufficient showing on this point. Plaintiff's counsel explained that despite serving information subpoenas on a number of banks, the banks were refusing to comply, often invoking the "separate entity rule." Although the New York Court of Appeals has recently reaffirmed the separate entity rule with respect to levying and seizure of assets located in a foreign branch's accounts, see Motorola Credit Corp. v. Standard Chartered Bank, 24 N.Y.3d 149, 158, 996 N.Y.S.2d 594, 597(2014), that rule does not bar an order compelling a New York branch of an international bank to produce information pertaining to its foreign branches in response to an information subpoena (or, if necessary, a deposition). See B & M Kingstone, LLC v. Mega Int'l Commercial Bank Co., 15 N.Y.S.3d 318, 323 (1st Dep't

10

2015). Thus, it is unclear what the banks' legal justification is for refusing to comply with plaintiff's information subpoenas, and plaintiff has made no effort to compel the banks to comply.[3]

It is similarly unclear how appointing plaintiff as a receiver of Hebei's property would ameliorate this situation. Plaintiff would have me conclude that when a judgment creditor, armed with a federal court judgment, serves discovery demands on a bank, the bank will not comply, but if that same judgment creditor, armed with a receivership order, makes those same demands, then the banks will comply. Plaintiff has offered no evidence for this very fine distinction, and it does not make sense to me. In either case, it seems likely that any bank with a reluctance to disclose customer information is going to require a court order specifically directing it to do so, and it makes no difference whether the order is presented by a judgment creditor in its own name or cloaked in the mantle of receivership. Consequently, it would be an improvident exercise of the Court's discretion to appoint plaintiff as a receiver.

---

[3] Relatedly, the Court mentioned at oral argument that it may reconsider its earlier decision to register the judgment outside of this district in light of plaintiff's inability to collect evidence to date. Plaintiff has not renewed its application.

## CONCLUSION

Accordingly, plaintiff's motion [921] for contempt and to appoint a receiver is granted to the extent that plaintiff seeks a finding of contempt, but denied as to the remedies plaintiff has requested, without prejudice to seeking such other enforcement mechanisms as may be available to satisfy the judgment.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
        October 9, 2015